

| | | |
|---|---|---|
| ZACHARY W. CARTER<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | JOSHUA J. LAX<br>*Senior Counsel*<br>jlax@law.nyc.gov<br>(212) 356-3538 (tel.)<br>(212) 356-3539 (fax) |

April 19, 2019

**BY ECF**
Honorable Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: **Danielle Rosenfeld, et. ano. v. Tara Lenich, et al., 18 CV 6720 (NGG) (PK)**
      **Jarrett Lemieux v. Tara Lenich, et al., 18 CV 6721 (NGG) (PK)**

Your Honor:

    I am an attorney in the office of Zachary W. Carter, Corporation Counsel of the City of New York, counsel for defendants City of New York, Kings County District Attorney Eric Gonzalez, Lu-Shawn Thompson as administrator of the Estate of Kenneth Thompson, Mark Feldman, William Schaefer, Brian Donohue, William Power, Michael Dowling, Joseph Piraino and Robert Kenavan (collectively, "City defendants") in the above-referenced matters. I write pursuant to the Court's March 28, 2019 orders in each matter directing the parties to submit letter briefs regarding their positions as to whether the content of intercepted communication should be made available to counsel. The parties have conferred, and no agreement has been reached. Plaintiffs' counsel in the above-referenced matters (the same counsel in the Lemieux matter is also counsel in the Danielle Rosenfeld matter) maintains that all contents of the intercepted communications should be protected from disclosure. Defendants, represented by the undersigned, as set forth below, submit that plaintiffs have put the contents of these materials at issue and therefore, disclosure is appropriate and necessary as discovery in this case. For the reasons set forth below, defendants respectfully request that the Court issue an order permitting the Kings County District Attorney ("KCDA") to release the contents of the intercepted communications to counsel and their clients for use in the litigation of the these matters pursuant to an appropriate protective order.[1]

---

[1] The Court's March 28, 2019 Order in each matter allowed each party a ten page double-spaced letter to set out their position. As a matter of efficiency and economy, because the undersigned represents the same parties in both matters, the undersigned consolidated these submissions into a single letter with arguments for both matters to be filed on both dockets. City defendants hope

Continued…

## I. Background

As the Court is aware, these matter arises from the unlawful scheme by defendant Tara Lenich to intercept the cellular phone communications of plaintiff Jarrett Lemieux and Stephanie Rosenfeld, who maintains a separate action. Upon information and belief, the communications are both voice recordings of telephone calls, and data in the form of text messages and related content. Defendants in both of the above-referenced matters seek discovery of all the intercepted communication. Before moving to defendants legal argument, they review the salient allegations in the complaint in each matter as they relate to the issue at bar.

### a) Allegations in the Danielle Rosenfeld and Vincent Garcia Putative Class Action

Danielle Rosenfeld and Vincent Garcia seek to represent a class of all those individuals who were incidentally intercepted when they communicated with plaintiffs Jarrett Lemieux and Stephanie Rosenfeld. Plaintiffs allege in this action that hundreds of individuals spoke to and exchanged text messages with Stephanie and plaintiff Lemieux ("the target plaintiffs"), and each of the hundreds of individuals is a victim of a serious invasion of privacy. (Complaint, 18 CV 6720 (NGG)(PK), Civil Docket Sheet, Entry Number 1 ("RG Complaint"), at ¶ 4). Further, plaintiffs seek punitive damages against the individual defendants based on the "violation of each victim's privacy rights during the course of the wiretapping operation." (RG Complaint at ¶ 7). Plaintiff Danielle Rosenfeld alleges she had dozens of communications with Stephanie, and that she is entitled to statutory damages and punitive damages. (RG Complaint at ¶ 8). Plaintiff Victor Garcia alleges he had "several communications" with plaintiff Lemieux, and he seeks statutory damages and punitive damages as well. (RG Complaint at ¶ 9).

In support of their desire to represent a class of people who plaintiffs claim were intercepted when communicating with the target plaintiffs, they make a number of allegations relevant to this application. First, they allege that the number of members of the class are so numerous that Joinder is impractical. (RG Complaint at ¶ 30). In that regard, plaintiffs admit that the precise identity of these individuals can only be determined by review of records and data. (Id.). Plaintiffs further allege that there are questions of law and fact common to the class. (RG Complaint at ¶ 31). Plaintiffs also say that the named plaintiffs were subjected to "significant, unjustified and unlawful invasion of privacy when their personal, private communications were intercepted. . . ." (Id.). Plaintiffs represent that members of the class reside in different jurisdictions throughout the United States. (RG Complaint at ¶ 34).

With respect to plaintiffs allegations regarding the events underlying this matter, plaintiffs allege that defendant Lenich was acting for the benefit of the KCDA because her motivation was "trying to protect" her work during an investigation in which plaintiff Lemieux

---

this decision meets with the Court's approval, and will disaggregate the submission if the Court so directs.

was involved, which Lenich describes as "the biggest case of [her] career." (RG Complaint at ¶(RG Complaint at ¶ 75). Finally, plaintiffs allege that the KCDA defendants in this matter listened to intercepted communications, disclosed the communications to each other and other employees of the KCDA, and in turn, "characterizations" of the content of the recordings appeared in the media. (RG Complaint at ¶¶ 95-103).

### b) Allegations by Plaintiff Lemieux

Plaintiff Jarrett Lemieux claims that Lenich not only intercepted his communications, she disclosed information from the communications to harass plaintiff, and undermine his relationship with others in the KCDA and the New York City Police Department ("NYPD"), including plaintiff's partner and supervisor. (Complaint, 18 CV 6721 (NGG)(PK), Civil Docket Sheet, Entry Number 1 ("Lemieux Complaint"), at ¶¶ 5, 66-67). He further alleges that others in the KCDA spread rumors that "found their origins illegally interecepted conversations." (Lemieux Complaint at ¶ 5). Plaintiff also alleges that after Lenich's scheme was uncovered, his name and false and/or misleading information about him were leaked to the press. (Lemieux Complaint at ¶ 6). Plaintiff claims that he has been treated like a pariah as a result of these alleged revelations. (Lemieux Complaint at ¶ 7). He further contends that he has been "severely harmed," including severe embarrassment and ongoing anxiety and emotional distress from "this grievous invasion of his privacy." (Lemieux Complaint at ¶ 8). Plaintiff also claims that he has suffered professional consequences in the form of missed opportunity for overtime, an impact on his pension, and the loss of prospects for a possible job in the private sector following his retirement from the NYPD. (Id.).

Plaintiff makes a number of allegations about the contents of the intercepted communications. In particular, plaintiff alleges he used his cell phone to communicate with his wife, children, other family members, and friends. (Lemieux Complaint at ¶ 63). Plaintiff similar avers that he used this cell phone to communicate with colleagues and informants used by the NYPD in a variety of investigations. (Id.). Plaintiff alleges he did not consent to these interceptions. (Lemieux Complaint at ¶ 64). Plaintiff also asserts that he only learned that his private communications had been intercepted after Lenich was arrested. (Lemieux Complaint at ¶ 69). In terms of disclosure, plaintiff claims that one or more individual defendant was the source of leaks to the media. (Lemieux Complaint at ¶ 73). In that regard, plaintiff alleges that the individual defendants reviewed plaintiff's communications, discussed it amongst themselves and with other KCDA personnel, and in turn characterizations of the content of the communications appeared in the media. (Lemieux Complaint at ¶¶ 80-86). Plaintiff further claims that the contents of the communications were wrongly reviewed in the disclosure to a Justice of the New York State Supreme Court. (Lemieux Complaint at ¶¶ 91-93). To support his *respondeat superior* claim, plaintiff alleges that defendant Lenich was acting for the benefit of the KCDA because her motivation was "trying to protect" her work during an investigation in which plaintiff Lemieux was involved, which Lenich describes as "the biggest case of [her] career." (Lemieux Complaint at ¶ 99).

In further support of his damages claim, plaintiff claims the knowledge of having been intercepted for one and a half years has destroyed his sense of personal security or trust, that can no longer engage in a conversation or text message without fear of surveillance, and that

he fears leaving the house due to paranoia of being surveilled. (Lemieux Complaint at ¶ 120). He also claims that he is left to wonder to whom his private conversation have been disclosed, and whether people he interacts with in the NYPD or KCDA knows the details of his personal life. (Id.). The alleged leaks compounded these emotional injuries. (Lemieux Complaint at ¶ 121). In particular, plaintiff alleges that the media reported he was in a "love triangle" with Lenich and Stephanie Rosenfeld. (Lemieux Complaint at ¶ 122). Plaintiff appears to deny the truth of this description. (Lemieux Complaint at ¶ 6).

## II. Legal Argument

It is beyond cavil that in a civil suit for monetary damages, a plaintiff waives or forfeits their right to protection from disclosure of confidential information by placing the contents of the material in issue. Courts have so held in a variety of contexts. See e.g. Sims v. Blot, 534 F.3d 117, 131-34 (2d Cir. 2008) (discussing waiver for psycho-therapist records when mental condition placed in issue); Green v. Montgomery, 245 F.3d 142 (2d Cir. 2001) (waiver for records sealed by operation of the N.Y. Family Court Act § 375.1 protecting juvenile prosecution records); Cicero v. City of New York, Docket No. 11 CV 0360 (NGG), 2011 U.S. Dist. LEXIS 80880, at *6 (E.D.N.Y. July 25, 2011) ("Sealed records are made available under the premise that 'a party who voluntarily initiates a civil action ... dredges up the issues' protected under C.P.L. § 160.50."). The same principles relied upon to find a waiver or forfeiture of the privilege or protections in these cases has been applied in civil actions brought under the Wiretap Act.

First, a claim for punitive damages for violating the Wiretap Act in a civil action under 18 U.S.C. § 2520, as well as the assertion of a consent defense, rendered the fruits of an alleged unlawful wiretapping scheme discoverable. McQuade v. Michael Gassner Mech. & Elec. Contractors, Inc., 587 F. Supp. 1183, 1188-90 (D. Conn. 1984). The Court in McQuade discussed two bases for allowing discovery of the intercepted communications. The first was the defendants assertion of a consent defense to the claim, which the defendant maintained would be borne out by the contents of the communications. Id. at 1188-89. The Court held this was a proper basis to allow discovery since it meant that the Court would not be tasked with determining whether the recordings were unlawfully obtained for purposes of Section 2515 of the Wiretap Act which prohibits subsequent use of unlawfully obtained interceptions in subsequent judicial proceedings. More importantly, however, the Court held that plaintiff's claim for punitive damages alone opened discovery of the recordings, as well as plaintiff's claim that the recordings contained threats to the plaintiff by the defendant. In holding that plaintiff put the recordings in issue, the Court stated:

> To deny defendants' counsel any possibility of investigating or rebutting the allegations on which plaintiffs' claim for punitive damages is based, or of discussing the contents of the tapes with their clients in the course of preparing a defense of this lawsuit, would be to convert the allegations of the complaint into a judgment. Any such construction of the statute would be absurd on its face and would be so incompatible with basic notions of fairness in adversary proceedings that it might well raise questions regarding the statute's constitutionality.

Id. at 1190.  More recently, a District Court in this Circuit denied a protective order prohibiting the use of a recording at a deposition which was created without the plaintiff's knowledge or consent where the plaintiff allegedly used racial slurs.  Massaro v. Allingtown Fire Dist., No. 3:02cv537 (PCD), 2003 U.S. Dist. LEXIS 25331, at *1-2 (D. Conn. May 30, 2003).  The Court stated, "As plaintiff has elected to allege a violation based on the recording, an order will not issue impeding defendants' ability to defend against the claim."  Id. at *4.

The Court in McQuade also noted that any prohibitions in the Wiretap Act on subsequent use of illicit recordings are not meant to prohibit discovery for defenses of civil actions brought under Section 2520, which is the claim in these matters.  Supra, 587 F. Supp. at 1190, n. 13.  The Second Circuit has also stated that there is no ban in the wiretap statutes on civil discovery orders, although Courts considering such orders should consider the privacy implications.  SEC v. Rajaratnam, 622 F.3d 159, 184-85 (2d Cir. 2010).

a) **Discovery in the Rosenfeld/Garcia Putative Class Action**

Both the claims for liability and damages in the putative class action, as well as the alleged bases for certification, forfeit any protection against disclosure.  As to liability, the content of the recordings are relevant to defending against two distinct theories of liability against the City defendants.  First, because plaintiffs allege unlawful disclosures based on a review of these intercepted communications, the actual content has been put at issue to test whether what plaintiffs allege was made public are contained in the communications.  Further, there may be statements in those recordings that indicate that the things plaintiffs allege were unlawfully disclosed were known to members of the KCDA for reasons unrelated to the recordings.  Second, plaintiffs claim that the City is liable under *respondeat superior* for Lenich's conduct.  In making that claim, plaintiff contends that the interceptions were intended to somehow safeguard one of Lenich's investigations or prosecutions.  The content of the communications are relevant to this point since they would show whether the scheme had some "professional" motivation or focused solely on private matters for which Lenich had an interest.

With regard to the class allegations, plaintiff avers that all members of the class were subjected to significant invasions of privacy.  The degree to which any individual had their privacy invaded could be rebutted by the communications.  For example, if one interception was simply a call to a deli to order a sandwich, and the putative class member took an order while on the phone in the middle of the deli and discussed nothing more than the order, one could hardly say a significant invasion of privacy occurred.  Similarly, if a text message states "I am here," referring the fact that one participant is present in a public place waiting for one of the plaintiffs to meet them, that is arguably not a significant invasion of privacy.  Moreover, who the class members are cannot be judged from anything but the recordings.  The metadata for each interception does not disclose who is the actual individual involved in the communication.  All that can be seen is the phone number involved in the communication.  Just having the number, or even the account information for the telephone number from the carrier, would not identify the actual person involved.  The numbers could be associated with a business or another member of a household in a "family plan," in which case one would not know the actual identity of the caller.  Moreover, subpoenaing records from different telephone providers for numerous telephone numbers to identify the class members is unduly burdensome to all parties when

presumably one of the plaintiffs involved in one of the three related matters could identify the person speaking on the telephone, or who the text message was from.

Plaintiffs' damages claims also put these materials at issue. First, plaintiffs are seeking punitive damages against each defendant based on the violation of privacy to each member of the class. Here again, in order to defend against this damages claim, defendants are entitled rebut what those violations of privacy, or the lack of such a violation, was in the circumstances of this case.

Lastly, the communications are also relevant to plaintiffs' statutory damages claims. Plaintiffs describe their entitlement to statutory damages as automatic. In other words, if they establish liability, they and the class are automatically entitled to statutory damages. This is not so. Courts have the discretion to deny damages because "[a]n award of statutory damages under § 2520(c)(2)(B) is discretionary." DIRECTV, Inc. v. Neznak, 371 F. Supp. 2d 130, 134 (D. Conn. 2005) (citing Dorris v. Absher, 179 F.3d 420, 429 (6th Cir. 1999)(remanding case of secret recording of employees to trial court to determine whether Court should exercise discretion and award $10,000 statutory damages where the events at issue took place over eight days and would amount to a per diem award $800); In re State Police Litig., Case No. 5:89cv606 (AHN), 1999 U.S. Dist. LEXIS 21491, at *14-15 (D. Conn. Dec. 2, 1999). The import of these cases is that they demonstrate that Courts have the discretion to award less damages than specified in the statute where the circumstances would indicate the full amount of statutory damages is inappropriate. Thus, the intercepted communications in this matter are relevant to an argument by the defense that the Court should exercise its discretion in this matter and deny statutory or any type of damages to plaintiffs. For example, plaintiff Garcia alleges that "several" of his communications were intercepted. What the content of those "several" communications may lead to an argument that the Court should deny any or some amount of damages. If the content is trivial or banal, or of a less personal and private nature, defendants would have a strong argument in favor of withholding damages. This too would also be relevant to class certification. If defendants could show that a number of the class members would be subject to the discretionary denial of all or some of the statutory damages, such individual considerations could defeat a motion for class certification.

For these reasons, the Court should permit discovery regarding the content of the intercepted communications.

### b) Discovery in the Lemieux Matter

Plaintiff Lemieux has placed the content of the interceptions at issue through a number of claims and assertions. At the outset it is worth noting that plaintiff makes several characterizations of what is in the communications, including who the communications were with, and whether they relate to personal or professional matters. The mere fact that plaintiff makes those characterizations puts the content of the communications at issue. This becomes a greater problem if this matter goes to trial, because plaintiff and his counsel will want to talk about these interceptions in opening, summation, and testimony. Even if plaintiff and his counsel do not go further than these general statements, defendants will nonetheless have been deprived an opportunity to take discovery regarding assertions that will be made to a jury. As

noted above, a matter of basic fairness requires that defendants have an opportunity to respond to any such characterizations.

Much of the same allegations discussed with regard to the putative class action apply here since many overlap, particularly regarding the alleged disclosures by the City defendants. Further, plaintiff claims that Lenich used the content of the interceptions to harass and undermine his professional relationships, and plaintiff seeks to hold the City liable for this conduct. Here again, plaintiff has put in issue the content of the intercepted communications because he is alleging that the contents were used to cause him harm. Similarly, he claims that some or all of the defendants are liable for the alleged reporting on the scheme and the statement that plaintiff was involved in a love triangle. If plaintiff is claiming that came from the communications, this puts the content of the communications at issue. Likewise, plaintiff alleges false and misleading information was leaked to the press and some defendant in this matter legally responsible. This too puts the contents of communications at issue because defendants are entitled to prepare a defense to the allegations that something was leaked, that it was from the communications exclusively, and that it is false and misleading. The contents of the interceptions may have statements relevant to attacking every aspect of these allegations. The same is true of plaintiff's assertion that Lenich's disclosure of matters within the interceptions that led to rumors throughout the KCDA.

The intercepted communications are also relevant to plaintiff's claims for emotional injuries and damages. Plaintiff is claiming severe embarrassment, and ongoing anxiety and emotional distress. He claims that since learning of the interception he is paranoid leaving his house, he has lost all sense of trust and remains fearful of surveillance. These allegations also put in issue the content of the interceptions because defendants are entitled to investigate and defend against the alleged emotional impact of the scheme. Further, plaintiff claims part of his emotional injuries stems from not knowing what is in the interceptions. Defendants are entitled to investigate or challenge this contention, and the content of the interceptions may permit them to do this in several ways. The communications may ultimately include items that are trivial or banal and whether or not someone knew about the exchange would have little emotional impact. On the other hand, the communications could concern significant issues or events, and the idea that plaintiff would not remember these exchanges belies credibility. On that point, plaintiff's claim he has a wholesale inability to recall the communications from the relevant time period appears self-serving in light of other allegations regarding the possible "love triangle" and rumors that undermine his career and reputation. Of course, this irreconcilable series of allegations also warrants discovery of the communications.

Plaintiff also seeks damages for a series of economic injuries he claims resulted from the revelation that Lenich had targeted him in her scheme. It is worth noting that one would expect plaintiff to want to use the contents of the communication to show what was being said about the recordings is false. Plaintiff is seeking, however, to avoid disclosure. If the rumors Lenich was supposedly using to undermine plaintiff were true, and plaintiff was in fact acting in a way that was detrimental to his career, that would be a valid basis for discovery to rebut these particular damages claims. In other words, defendants should be able to argue there is a different valuation between having rumors or other false statements made from the recordings, versus getting caught doing something one ought not be doing, even though the genesis of both results are Lenich's unlawful wiretapping scheme?

Lastly, denying discovery of the communications denies the parties the best evidence of what is in the communications. In other words, if the status quo remains in terms of the communications, counsel will be operating on an assumption of what the communications are (in so far as counsel does not have clients privy to those communications as discussed below). In fairness to all parties, the mystery as to what was said or exchanged should be lifted.

### c) Danger of One Sided Disclosures

As has been discussed throughout the history of these cases, one sided discovery is not allowed and discovery should seek to put all parties in an equal position as far as the facts are concerned. See State Farm Mut. Auto. Ins. Co. v. Grafman, 274 F.R.D. 442, 44 (E.D.N.Y. 2011) (citing SEC v. Rajaratnam, 622 F.3d 159, 174-75 (2d Cir. 2010) (stating the "the role of civil discovery [is to] ensure[] informational equality between the parties" and that an "informational imbalance" gives the non-producing party an unfair advantage in a civil proceeding)). The parties at this stage, however, are not in informational equality. Counsel for Stephanie Rosenfeld, Danielle Rosenfeld, Victor Garcia, Jarrett Lemieux, and Tara Lenich have clients who know what are in the communications, which, even assuming the veracity of plaintiffs' allegations, far exceeds that of any of the City defendants. Thus, at the start City defendants are at a disadvantage. Access to the intercepted communications would solve this problem.

Finally, defendants note that because counsel overlaps in the various actions, if the Court finds access is warranted in one of the actions, defendants believe all parties should have access in the three cases based on the principles of informational equality discussed in Rajaratnam.

### III. Conclusion

Based on the foregoing discussion, the Court should permit the parties and counsel to review the contents of the intercepted communications in the above-referenced matters.

Defendants thank the Court for its consideration of this request.

Respectfully submitted,

/s/

Joshua J. Lax
Senior Counsel
Special Federal Litigation Division

cc: All counsel **(By ECF)**